**UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Jonathan Davis,<br><br>Debtor. | C/A No. 17-06271-JW<br><br>Adv. Pro. No. 18-80038-JW<br><br>Chapter 13 |
| Jonathan Davis,<br><br>Plaintiff,<br><br>v.<br><br>Angel Blair,<br><br>Defendant. | **ORDER** |

This matter comes before the Court upon the Complaint in this adversary proceeding filed by Jonathan Davis ("Davis"). The Complaint alleges that a contempt order and arrest warrant[1] issued by the Honorable F. Gates Peed of the Superior Court of Effingham County State of Georgia ("Superior Court") against Davis and at the request of Angel Blair ("Blair") violate the automatic stay under 11 U.S.C. § 362,[2] which protects a debtor from creditors' post-petition attempts to collect the debtor's prepetition debt. Davis asserts that as a consequence of violating the automatic

[1] Although under Georgia law the warrant's denomination as a bench warrant or arrest warrant is of no consequence since "a bench warrant is merely an arrest warrant issued by a judge," the warrant in this case appears in fact to be a bench warrant. *Bunyon v. Burke County*, 285 F.Supp.2d 1310, 1322 (S.D. Ga. 2003) (citing *also Kametches v. State*, 242 Ga. 721, 723 (1978). According to Black's Law Dictionary, an arrest warrant is "a warrant, issued only on probable cause, directing a law-enforcement officer to arrest and bring a person to court." A bench warrant is "a warrant issued directly by a judge to a law-enforcement officer, esp. for the arrest of a person who has been held in contempt, has been indicted, has disobeyed a subpoena, or has failed to appear for a hearing or trial." In this case, the warrant was issued directly by Judge Peed for the arrest of Davis because the court held Davis in contempt when he failed to pay child support and appear for a hearing on December 18, 2017. Nevertheless, for consistency, the Court will refer to the warrant by its title (arrest warrant) throughout this order.

[2] Further references to the Bankruptcy Code (11 U.S.C. § 101, *et al.*) may be by section number only.

stay, the contempt order and the arrest warrant are void *ab initio*. He therefore requests to be released from jail, and to be granted thereafter a hearing on damages pursuant to § 362(k).

Blair has filed an Answer denying her liability and a Counterclaim against Davis alleging that he filed chapter 13 bankruptcy and the Complaint in this action in bad faith. She alleges that Davis filed both with no intention of either paying his back due child support or remaining current post-petition with his domestic support obligations as required by the Bankruptcy Code.

Davis's continuing incarceration has made necessary an expedited determination as a preliminary issue of whether the Superior Court's contempt order and arrest warrant are void.[3] To that end, the Court instructed the parties to file a joint statement of dispute, and held a hearing on the issue on August 16, 2018. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334, and this is a core proceeding under 28 U.S.C. § 157. Pursuant to Fed. R. Civ. P. 52, which is made applicable to this matter by Fed. R. Bankr. P. 7052, the Court makes the following findings of fact and conclusions of law.[4]

## FINDINGS OF FACT

1. Prepetition, Davis and Blair were married. They had one child who remains a minor.

2. The parties are both attorneys. Davis was licensed to practice law in South Carolina, and Blair is licensed to practice law in Georgia.[5]

3. Davis and Blair were divorced on December 11, 2008, by final judgment and decree of the Superior Court of Bryan County, State of Georgia.

---

[3] The Court will separately consider Davis's request for damages pursuant to § 362(k) at a hearing after discovery.

[4] To the extent any of the following findings of fact are conclusions of law, they are so adopted, and to the extent any of the following conclusions of law are findings of fact, they are so adopted.

[5] Davis's law license was suspended most recently on September 7, 2017.

4. As a result of the divorce, Davis became obligated to pay child support in the amount of $800.00 per month beginning July 1, 2008.

5. On February 22, 2017, the Effingham County Superior Court found that Davis owed an arrearage of $37,797.72 in child support payments. The Superior Court denied Davis's request to modify the continuing $800.00 per month child support obligation and ordered him to pay the arrearage at a rate of $600.00 per month.

6. On November 3, 2017, Blair filed a Motion for Contempt for Davis's failure to comply with the Superior Court's February 22, 2017 order to pay child support.

7. As a result of Blair's motion, the Superior Court ordered Davis to appear and show cause why he should not be held in contempt. The hearing on the motion was scheduled for December 18, 2017 at 9:00 AM.

8. Although Davis was personally served with notice of the hearing on November 22, 2017, he failed to appear on December 18, 2017.

9. At some point during a general court session on December 18, 2017, the Superior Court determined, based upon the statements by Blair, that Davis had failed to pay his child support obligations and was in arrears in the amount of $40,477.72. The Superior Court judge indicated that he would find Davis in contempt and issue an arrest warrant providing for Davis's incarceration until he paid a purge amount of $10,000 towards the arrearage.

10. According to Blair's testimony, as requested by the Superior Court judge, she subsequently prepared a form order commonly used in that court for the judge's consideration and presented it to courtroom staff at or around 9:22 AM. Blair further testified that she believed the order was signed before 9:31 AM while the judge continued to preside over other cases in the same general court session.

11. There is no transcript of the December 18, 2017 hearing, and Davis was unable to testify before this Court regarding the December 18, 2017 hearing due to his continuing incarceration.

12. At 9:56 AM on December 18, 2017, Davis filed a voluntary petition for relief in this Court under chapter 13 of the Bankruptcy Code.

13. According to Davis's cellphone records, he placed a call to the Effingham County Superior Court at 10:45 AM on December 18, 2017, which according to Davis's Complaint, was to alert the court to his bankruptcy filing.

14. At 10:49 AM on December 18, 2017, the Clerk of Court filed the written contempt order and arrest warrant issued by the Superior Court.

15. The contempt order held Davis "in willful contempt," ordered that he be incarcerated until he paid a purge amount of $10,000.00 to Blair or the court's registry, and directed Davis to immediately resume timely payments of his child support obligations upon his release from incarceration. The arrest warrant mirrored the terms of the contempt order but ordered Davis to be arrested.

16. Davis's chapter 13 bankruptcy case was dismissed on January 22, 2018 due to his failure to timely file bankruptcy schedules, statements, and a plan.

17. Davis was arrested on February 16, 2018 pursuant to the Superior Court's December 18, 2017 arrest warrant, and he remains incarcerated to this date.

18. Davis filed the Complaint in this adversary proceeding on May 25, 2018 against the Superior Court of Effingham County State of Georgia and Angel Blair.

19. Blair filed an Answer and Counterclaim against Davis on June 28, 2018, and an amended Answer and Counterclaim on July 30, 2018.[7]

20. On July 5, 2018, Davis filed a Motion for Default Judgment as to the Superior Court of Effingham County State of Georgia, and a Motion to Dismiss the Counterclaim of Angel Blair.

21. A hearing was held on August 1, 2018 during which the Court considered the Affidavit of Default Re: Complaint Certification of Default as to the Superior Court of Effingham County State of Georgia, the Motion for Default Judgment, and the Motion to Dismiss.

22. After receiving briefing from the parties on the issues on August 9, 2018, the Court entered a Consent Order dismissing without prejudice the Superior Court of Effingham County State of Georgia and continued the hearing on the Motion to Dismiss to August 16, 2018.

## CONCLUSIONS OF LAW

### I. Jurisdiction and authority to consider an action for violation of the automatic stay in an adversary proceeding that was commenced after dismissal of the related bankruptcy case.

The matter before the Court is an adversary proceeding filed May 25, 2018 alleging violations of the automatic stay pursuant to § 362. This proceeding is related to the bankruptcy case (No. 17-06271) that was dismissed on January 22, 2018. Davis asserts that this Court has jurisdiction over this matter because the violation of the automatic stay accrued during the pendency of his bankruptcy case. In opposition, Blair contends that this Court may not adjudicate the matter because the bankruptcy court's authority depends upon the continued existence of the automatic stay, which terminated when the bankruptcy case was dismissed. Thus, whether the

[7] During the August 1, 2018 hearing before this Court, there was some dispute between the parties as to whether Blair's Answer and Counterclaim were timely amended and filed. This issue is the subject of the Motion to Dismiss and will be addressed by a separate order.

dismissal of Davis's bankruptcy case divests this Court of jurisdiction to proceed with an adversary proceeding alleging a cause of action for violation of the automatic stay is a threshold issue.

Initially, the Court notes that the parties have agreed in their pleadings that this Court has jurisdiction, that this action is a core proceeding under 28 U.S.C. § 157, and that this Court has final authority to adjudicate it.[9] While this settles the discussion, the Court will also examine relevant statutes. First, it is noteworthy that no provision in the Bankruptcy Code mandates dismissal of a § 362 proceeding when the related bankruptcy case is already closed, nor does § 362 contain any suggestion that a claim for violation of the automatic stay exists only as long as the bankruptcy case remains pending. *See Price v. Rochford*, 947 F.2d 829, 831–32 (7th Cir. 1991) (finding that the language of the statute [§ 362] does not support such a limitation on the breadth of the provision). While Congress contemplated and set forth the effects of dismissing a bankruptcy case in § 349, it included no provision that limits the Court's jurisdiction to determine a violation of the automatic stay that occurs during a bankruptcy case. *See Burgner v. Ga. Fed. Credit Union (In re Burgner)*, 218 B.R. 413, 414 (Bankr. E.D. Tenn. 1998) (noting that several paragraphs of § 349(b) "deal [] indirectly with some adversary proceedings by attempting to undo what has already been done," but that "[n]one of these provisions is relevant to Debtor's complaint for violation of the automatic stay"); *In re Davis*, 177 B.R. 907, 911 (9th Cir. B.A.P. 1995) ("Section 349(b) does not . . . retroactively vacate the automatic stay, vacate orders remedying violation of the stay, or vitiate any cause of action based upon violation of the stay.").

Furthermore, Congress set no statute of limitations within which a claim for violation of the automatic stay must be filed. *Stanwyck v. Bogen (In re Stanwyck)*, 450 B.R. 181 (Bankr. C.D.

[9] Paragraph 1 of Davis's May 25, 2018 Complaint alleges this Court's jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(b)(3)(G) and 1334, and that this is a core proceeding under 28 U.S.C. § 157(b)(2). Blair's June 28, 2018 Answer admits paragraph 1 of Davis's Complaint. Paragraph 8 of the August 15, 2018 Joint Stipulation contains the parties' consent to this Court entering final orders and judgments in this proceeding.

Cal. 2011) (holding that an adversary proceeding to recover damages for an allegedly willful violation of the automatic stay may be commenced in bankruptcy court years after the related bankruptcy case has been administered and closed, without reopening the case); *Soriano v. Wells Fargo Bank, N.A. (In re Soriano)*, 587 B.R. 371, 389 (Bankr. W.D. Okla. 2018) ("The Bankruptcy Code does not contain a statute of limitations within which actions for damages for violation of the automatic stay under 11 U.S.C. § 362(k) must be filed."); *In re Bernheim Litigation*, 290 B.R. 249, 258 (D.N.J. 2003). Because Congress conceived the stay protection to be broad, courts are reluctant to impose an "artificial limit on the breadth of the provision." *Rochford*, 947 F.2d at 831–32.[10]

Additionally, courts in multiple Circuits, as indicated below, have held that a claim for a violation of the automatic stay is a core proceeding arising under title 11, and that bankruptcy courts may exercise jurisdiction over these proceedings pursuant to 28 U.S.C. § 1334(b) and § 157(b)(1), regardless of whether the underlying bankruptcy case remains open. *Menk v. Lapaglia (In re Menk)*, 241 B.R. 896, 904 (9th Cir. B.A.P. 1999). These courts have concluded that such claims are core proceedings because they originate under bankruptcy law and because the automatic stay is a fundamental provision of the Bankruptcy Code. *W.D. Equip., LLC v. Cowen (In re Cowen)*, 849 F.3d 943, 947 (10th Cir. 2017); *Johnson v. Smith (In re Johnson)*, 575 F.3d 1079, 1083 (10th Cir. 2009); *Amedisys, Inc. v. Nat. Century Fin. Enters., Inc. (In re Nat. Century Fin. Enters., Inc.)*, 423 F.3d 567 (6th Cir. 2005); *In re Stringer*, 586 B.R. 435, 438 (Bankr. S.D. Ohio 2018); *MBNA Am. Bank, N.A. v. Hill,* 436 F.3d 104, 109 (2d Cir. 2006) (holding that an action under § 362(k)(1) is a core proceeding because it "derives directly from the Bankruptcy

[10] The Court observes that laches is a prominent affirmative defense raised against reopening a case but notes that no party has requested to reopen the bankruptcy case here.

Code and can only be brought in the context of a bankruptcy case"). It could not be the intent of Congress to render lifeless a core proceeding that relates to a bankruptcy case merely because the core proceeding's progress on the docket outlasts the bankruptcy case. *See In re Statistical Tabulating Corp.*, 60 F.3d 1286 (7th Cir. 1995) (citing *Carraher v. Morgan Elecs., Inc. (In re Carraher)*, 971 F.2d 327, 328 (9th Cir. 1992) and noting that "conspicuously absent" from the list of various effects of dismissal of an underlying bankruptcy case under § 349 of the Code is automatic termination of jurisdiction of related cases).

It is clear from the Court's review of the relevant statutes and case law that the decisive issue in this analysis is whether the alleged violation occurred when the automatic stay was in effect, and not when the harmed party seeks redress for the violation. A bankruptcy court's authority to enforce § 362 violations in order to "compensate victims ... and punish the violators" cannot be limited by the timing or pace of progression of the underlying case. *Johnson*, 575 F.3d at 1083; *see also Davis v. Courington (In re Davis)*, 177 B.R. 907, 911–12 (9th Cir. B.A.P. 1995). Public policy dictates that "dismissal of a case does not validate actions which constituted violations of the automatic stay during the pendency of that case." *D'Alfonso v. A.R.E.I. Inv. Corp. (In re D'Alfonso)*, 211 B.R. 508, 513 (Bankr. E.D. Pa. 1997) (citing *Davis*, 177 B.R. at 911–12; *In re Lampkin*, 116 B.R. 450, 451–53 (Bankr. D. Md. 1990); and *Sports & Science, Ind., Inc. v. Rielly (In re Sports & Science Ind., Inc.)*, 95 B.R. 745 (Bankr. C.D. Cal. 1989)).

Blair's opposition to this Court's jurisdiction and authority appears to rely upon *In re Singleton* for the proposition that the bankruptcy court's ability to enforce the automatic stay expired when Davis's bankruptcy case was dismissed. *Singleton v. Countrywide Home Loans, Inc. (In re Singleton)*, 358 B.R. 253, 259 (D.S.C. 2009). However, *Singleton* appears to be neither applicable nor persuasive to defeat this Court's jurisdiction or authority. In *Singleton*, the District

Court for the District of South Carolina held that a bankruptcy court had no authority to "reopen" a dismissed case and retroactively reimpose the automatic stay to invalidate a foreclosure sale of a debtor's property that occurred after dismissal and before reinstatement of the bankruptcy case. *Id.* at 257–58. However, the instant case is clearly distinguishable. First, no party has requested the reopening of the case, or reconsideration of dismissal. Such a request is not necessary because this Court may exercise jurisdiction directly over this adversary proceeding pursuant to 28 U.S.C. § 1334. Furthermore, Davis alleges that the violation of the stay occurred during the pendency of the bankruptcy case, and before it was dismissed. Therefore, the Court need not consider a retroactive re-imposition of the automatic stay for Davis's cause of action to be preserved and prosecuted.

In conclusion, 28 U.S.C. §§ 157 and 1334 provide this Court with jurisdiction and authority to adjudicate Davis's cause of action for violation of the stay that accrued during his bankruptcy case. No provision of 11 U.S.C. § 349, 28 U.S.C. § 1334, or other cited statute indicates that the cause of action should be foreclosed or otherwise affected by the subsequent dismissal of the bankruptcy case. In addition, for purposes of this proceeding, the parties have agreed in their pleadings to this Court's jurisdiction and final authority and that the matter is a core proceeding. Therefore, the Court finds that the dismissal of Davis's bankruptcy case does not divest it of jurisdiction or otherwise prohibit it from consideration of this adversary proceeding alleging a violation of the automatic stay.

## II. Time when contempt order and arrest warrant issued by the Superior Court became effective.

The next important issue in this case is whether the contempt order and arrest warrant issued by the Superior Court were effective before or after the filing of Davis's bankruptcy petition

at 9:56 AM on December 18, 2017.[12] Blair argues that the Superior Court's order was effective prepetition as soon as the judge indicated his ruling during the hearing, which she testified occurred between 9:00 and 9:31 AM. Davis asserts that the contempt order and arrest warrant were not effective until 10:49 AM, the time of their filing, which occurred post-petition.

Both parties agree that the timing of the effectiveness of the order is controlled by Ga. Code Ann. § 9-11-58 (West 2017).[13] The applicable section of the Civil Practice Act, Ga. Code. Ann. § 9-11-58(b), titled "When judgment entered," provides:

> The filing with the clerk of a judgment, signed by the judge, with the fully completed civil case disposition form constitutes the entry of the judgment, and **unless the court otherwise directs**, no judgment shall be effective for any purpose until the entry of the same, as provided in this subsection. As part of the filing of the final judgment, a civil case disposition form shall be filed by the prevailing party or by the plaintiff if the case is settled, dismissed, or otherwise disposed of without a prevailing party; provided, however, that the amount of a sealed or otherwise confidential settlement agreement shall not be disclosed on the civil case disposition form. The form shall be substantially in the form prescribed in Code Section 9-11-133. If any of the information required by the form is sealed by the court, the form shall state that fact and the information under seal shall not be provided. The entry of the judgment shall not be made by the clerk of court until the civil case disposition form is filed. The entry of judgment shall not be delayed for the taxing of costs. This subsection shall not apply to actions brought pursuant to OCGA Sections 44-7-50—44-7-59.

(emphasis added).

[12] This Court has previously held that the entry of prepetition orders of contempt related to the collection of prepetition domestic support obligations do not implicate the automatic stay. *Rucker v. Johnson (In re Rucker)*, 458 B.R. 287, 292 (Bankr. D.S.C. 2011); *In re Gillians*, C/A No. 10-06461-JW, slip op. (Bankr. D.S.C. Nov. 17, 2010). However, the instant case is distinguishable from *Rucker* and *Gillians* because the state court's contempt order and arrest warrant appears to have been filed and became effective after the Debtor's bankruptcy filing.

[13] The Court notes that a later version of the Civil Practice Act, which the parties refer to in their briefs, became effective on January 1, 2018. The later version of the statute appears to make minor revisions to clarify which landlord/tenant proceedings are excepted from the statute. It does not appear this later version of the statute is applicable to this matter; nonetheless, the Court would find the outcome of this matter to be the same under either version of the statute.

A plain reading of this statute indicates that to be effective before the filing of the written order, the court must otherwise direct, that is, specifically indicate, that the judgment is to be effective prior to signature and filing.[14] The rationale for this interpretation has been stated recently by the Supreme Court of Georgia: "[u]ntil an oral pronouncement is memorialized, the trial judge has broad discretion to amend, alter, or completely change his decision, and any discrepancy between the oral pronouncement and the written ruling will be resolved in favor of the written judgment." *Mondy v. Magnolia Advanced Materials, Inc.*, 815 S.E.2d 70, 78 (Ga. 2018). In exercising judicial discretion, a judge's final written order may not always perfectly mirror a previously announced oral ruling. Therefore, a judge's ruling in open court must be "clearly intended to take effect immediately"; otherwise, it will not be effective until it is signed and filed by the clerk. *Mondy*, 815 S.E.2d at 79.

In the instant case, there is no transcript, affidavit, or testimony provided by the judge or other party who was present besides Blair, who has an interest in the outcome of this action. At the hearing before this Court on August 16, 2018, Davis's counsel asked Blair if she remembered the judge stating that he intended for his ruling to take immediate effect. Blair answered:

> "[The judge] asked, 'Do you have an order?' I said, 'Yes, I have a contempt order and an arrest warrant.' [The judge] asked, 'Do you want him arrested? Do you want me to issue an arrest warrant?' and I said, 'Judge, I want my money, I want Kira's child support. We need the money.' And then [the judge] said, '$10,000 purge. Merry Christmas. Bring me the order.'"[15]

---

[14] Under Georgia state law, "the term 'judgment,' as used in Civil Practice Act, includes a decree and any order from which an appeal lies." Ga. Code Ann. § 9-11-54(a) (West 2017). Under Ga. Code. Ann. § 9-11-58(a) (West 2017), all judgments must be signed by the judge and filed with the clerk, except when otherwise specifically provided by statute.

[15] On direct examination by her counsel, Blair was asked, "After the testimony and the evidence was put before Judge Peed, were you asked to do anything?" Blair answered, "Give him an order." Counsel continued, "And it was just a matter of the clerk taking it downstairs and having it recorded?" Blair answered, "Yes."

While Blair testified that the judge's oral ruling was effective and made before Davis's 9:56 AM bankruptcy filing, her testimony is not sufficient, clear, or convincing for this Court to determine that the judge specifically directed that the oral ruling, and not the requested and subsequently signed and filed written order, would control. In fact, it is reasonably inferable from Blair's testimony that Judge Peed, by requesting a written order be submitted, thought that the signing and filing of the written order were necessary to effectuate his ruling.

After careful consideration and without clear evidence to the contrary, the Court finds Blair's testimony insufficient to allow for a conclusion that the Superior Court judge specifically directed that his oral ruling was to take immediate effect. Thus, this Court finds that the Superior Court judge's ruling on Blair's Motion for Contempt was not effective until the Clerk of Court filed the signed contempt order and arrest warrant at 10:49 AM, after Davis filed bankruptcy.

**III. Application of the automatic stay to the contempt order and arrest warrant as a means to collect prepetition domestic support obligations.**

Having determined that Davis filed bankruptcy before the Superior Court's ruling was effective, it appears that the contempt order and arrest warrant were subject to the automatic stay. The automatic stay "springs into being immediately upon the filing of a bankruptcy petition." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969, 975 (1st Cir. 1997). It "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against that debtor that was or could have been commenced before the commencement of the case under this title or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

Once the automatic stay is in place, "it protects all property of the estate regardless of whether or not notice has been given of the pendency of the case." *McGuffin v. Barman (In re BHB Enters., LLC)*, C/A No. 97-01975-JW, Adv. Pro. No. 97-80201, 1997 WL 33344249 at *4

(Bankr. D.S.C. Aug. 27, 1997) (citations omitted); *see also LaTempa v. Long (In re LaTempa)*, 58 B.R. 538, 540 (Bankr. W.D. Va. 1986) ("Under § 362(a), the automatic stay is effective upon filing of the petition. It does not require actual notice to the creditors to be effective."). The purpose of the automatic stay is to "protect the debtor from harassment, bother and contact [from creditors] for a reasonable period of time and prevent creditors from engaging in a 'race of diligence.'" *Miller v. Sav. Bank of Balt. (In re Miller)*, 22 B.R. 479, 481 (D. Md. 1982) (citing H. Rep. No. 94-495, Cong., 1st Sess. 340-2 (1977); S. Rep. No. 95-989, 95 Cong., 2d Sess. 49-51 (1978), U.S. Code Cong. & Admin. News 1978, p. 5787). The stay stops all actions that are not within certain statutory exceptions from proceeding against a debtor – "even those in pursuit of non-dischargeable obligations," like child support obligations. *Johnston v. Parker (In re Johnston)*, 321 B.R. 262, 285 (Bankr. D. Ariz. 2005).

In numerous districts, federal courts have held that the automatic stay protects a debtor from post-petition civil contempt proceedings (as distinguished from orders of criminal contempt) that seek to collect prepetition debt related to domestic proceedings. *Jordahl v. Dyal (In re Jordahl)*, 555 B.R. 861, 864 (Bankr. S.D. Ga. 2016); *Goodson v. Goodson (In re Goodson)*, C/A No. 17-41820, 2018 WL 722461 at *7–10 (Bankr. N.D. Ala. Feb. 5, 2018); *Moore v. Nunnari (In re Moore)*, 2009 WL 1616019 (Bankr. N.D. Ohio 2009); *Caffey v. Russell (In re Caffey)*, 384 B.R. 297 (S.D. Ala. 2008), *subsequently aff'd*, 384 Fed. Appx. 882 (11th Cir. 2010). Civil contempt, as opposed to criminal contempt, "seeks only to coerce the defendant to do what a court had previously ordered him to do." *Turner v. Rogers*, 564 U.S. 431, 441 (2011) (internal citations omitted); *see also In re Carpenter*, 2010 WL 2640604 (Bankr. D.D.C. June 29, 2010) (explaining that when a contemnor has a "key out of jail" by complying with an order, the sanction is not

criminal and does not come within the § 362(b)(1) exception for criminal proceedings against a debtor).

An objective reading of the contempt order in this case indicates that Davis's incarceration is a means to compel him to pay his pre-petition child support obligations. *See Tipton v. Adkins*, 257 B.R. 865, 874–75 (Bankr. E.D. Tenn. 2000) (holding that a motion and contempt proceeding violated the automatic stay provisions of § 362(a) where an ex-wife's motion threatened the debtor with a fine and imprisonment unless he paid his domestic support obligations). The language of the order indicates that the contempt is civil because it ordered that Davis would be incarcerated until he "pa[id] a purge amount of $10,000.00 to [Blair] directly, or into the registry of th[e] court." *See Turner v. Rogers*, 564 U.S. at 441–42 (finding that petitioner was in civil contempt of the state court's order because he could purge himself of contempt by making the required child support payments). The arrest warrant reiterates the terms of the contempt order and supplements it to effectuate incarceration. Therefore, the Superior Court's post-petition contempt order and arrest warrant appear civil in nature and aimed to collect pre-petition debt.

To conclude whether the post-petition contempt order and arrest warrant violated the automatic stay, the Court must finally consider whether the order and warrant fall under the exceptions provided by § 362(b). Section 362(b)(1) excludes the initiation or continuation of criminal proceedings, including criminal contempt orders. However, as stated above, the Court has concluded that the order and warrant in this case are not criminal in nature, but are in the nature of civil contempt. Section 362(b)(2) also excepts from protection the collection of a domestic support obligation from property that is not property of the estate. Section 541(a)(1) provides the general rule that property of the bankruptcy estate consists of all legal and equitable interests of the debtor

in property as of the commencement of the case, subject to certain exceptions not applicable here. In chapter 13 cases, property of the estate is:

> (a) Property of the estate includes, in addition to the property specified in section 541 of this title –
>
> (1) All property of the kind specified in such section that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first; and
>
> (2) earnings from services performed by the debtor after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 of this title, whichever occurs first.

11. U.S.C. § 1306.

In the present matter, upon the filing of his chapter 13 bankruptcy petition, all property Davis owned on the date of filing, plus all earnings from services performed after commencement of the case but before the case is closed, dismissed, or converted were property of the estate. 11 U.S.C. §§ 541 and 1306. Further, there was no indication or specification in either the contempt order or the arrest warrant that the source of any purge payment be made with funds that were not property of the estate. *See In re DeSouza*, 493 B.R. 669 (1st Cir. B.A.P. 2013) (holding that domestic support obligations could not be collected because state court's alimony order did not limit collection to non-estate property). Therefore, the Court finds that the order threatened debtor's property and the property of his estate, and the pertinent exceptions under § 362(b) do not apply. Thus, the contempt order and arrest warrant as a means to collect Davis's unpaid prepetition child support obligations violate the automatic stay.

**IV. The contempt order and arrest warrant are void as violations of the automatic stay.**

Among other things, Davis asserts that the issuance of the civil contempt order and arrest warrant are void as a result of being in violation of the automatic stay. This Court in *Weatherford*

*v. Timmark (In re Weatherford)* and multiple other courts within the Fourth Circuit have held that actions taken in violation of the automatic stay are void. *Weatherford v. Timmark (In re Weatherford)*, 413 B.R. 273, 283–84 (Bankr. D.S.C. 2009); *Mink v. Balt. Behavioral Health, Inc.*, C/A No. WDQ-11-1937, 2013 WL 3507314, at *2 (D. Md. July 10, 2013); *Ellison v. C.I.R.*, 385 B.R. 158, 164 (S.D.W. Va. 2008); *Valenti v. JP Morgan Chase Bank, N.A. (In re Valenti)*, C/A No. 13-01350-8-DMW, 2014 WL 4980039, *3 (Bankr. E.D.N.C. Oct. 6, 2014); *In re Carpenter*, C/A No. 10-03870-8-SWH, 2010 WL 3744337, at *2 (Bankr. E.D.N.C. Sept. 15, 2010); *Robb v. National Tree (In re Robb)*, 399 B.R. 171, 171 fn. 1 (Bankr. N.D.W. Va. 2008); *Felder v. Am. Gen. Finance, Inc. (In re Felder)*, No. 97-05465-B, 2000 WL 33710885, at *7 (Bankr. D.S.C. July 7, 2000). Accordingly, when an order is issued that violates the stay, the order is void and without effect.[21] Therefore, the contempt order and the arrest warrant issued by the Superior Court on December 18, 2017 must be declared void, and as a consequence of federal law, were not legally effective.

---

[21] In making this determination, the Court finds that the contempt order and arrest warrant were in violation of the automatic stay and therefore void *ab initio*. The Court is not concluding at this time whether the contempt order and arrest warrant were willful for the purposes of an award of damages, as the Court will address those matters after the completion of discovery by the parties. Regardless of whether the violation of the automatic stay was willful, the arrest warrant and contempt order would be void. *See Weatherford*, 413 B.R. at 284 (holding a judgment was void *ab initio* for violating the automatic stay even when the debtor had not provided notice of the bankruptcy case); *In re Halas*, 249 B.R. 182, 192 (Bankr. N.D. Ill. 2000) (noting that a violation of the automatic stay "was inadvertent as opposed to willful does not alter the legal conclusion that the default judgement was void when it was entered").

CONCLUSION

Based upon the evidence before the Court, the contempt order and related arrest warrant, which were effective upon their filing that occurred after the filing of Davis's bankruptcy petition, are void *ab initio* and without force or effect.[22] Furthermore, in light of this conclusion, this Court finds further proceedings are necessary, including the consideration of Davis's request for damages pursuant to § 362(k) and Blair's defenses and counterclaim thereto.[23]

**AND IT IS SO ORDERED.**

Columbia, South Carolina
October 3, 2018

**FILED BY THE COURT**
**10/03/2018**




Entered: 10/03/2018

US Bankruptcy Judge
District of South Carolina

[22] In light of this ruling, the Court suggests the parties discuss this determination as it relates to Davis's continued incarceration. To the extent the Debtor seeks further expedited consideration regarding his incarceration, he should file and serve a further motion and brief which cites all applicable authority.

[23] On October 1, 2018, the Court entered a scheduling order which provides for a period of discovery and final pretrial hearing.